**SOUTHWESTERN GAS & ELECTRIC CO. v. BROWN et al.**

No. 14527.

United States Court of Appeals Eighth Circuit.

July 10, 1952.

William H. Arnold III and William H. Arnold, Jr., Texarkana, Ark. (Richard L. Arnold and Thomas E. Webber, Texarkana, Ark., on the brief) for appellant.

George F. Edwardes, Texarkana, Ark., (Milton Hardage, Texarkana, Tex., on the brief), for appellees.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

Appellees, husband and wife, brought this action against appellant to recover damages for personal injuries and for damage to property caused by a collision between the pick-up truck owned and driven by Mr. Brown with a pick-up truck owned and driven by one Frank Eaton. The collision occurred in the early afternoon of November 2, 1950, in the town of Fouke, Arkansas. Plaintiffs alleged in their complaint that the collision was caused by the negligence of the defendant in that it had one of its trucks traveling in a southerly direction upon U. S. Highway 71, ahead of the vehicle in which plaintiffs were traveling, and that the truck of defendant was being operated at a point on said highway where the highway intersects with a main street of the town of Fouke, and said truck was parked on the said highway at the intersection in such a manner as to obstruct the view and vision of other persons lawfully using said streets and highways and that the plaintiffs proceeded around the said truck and collided with the pick-up truck of Frank Eaton, the view of which was obstructed by defendant's truck. It was alleged that defendant was negligent (1) in failing to cause adequate signals to be given; (2) in parking said truck along side the highway; (3) in causing the truck to be started when such movement could not be made with safety and (4) in obstructing a clear view of the intersection of said highway with the gin street. Defendant answered, denying any acts of negligence, and pleaded contributory negligence on behalf of plaintiffs. We shall refer to the parties as they were designated in the trial court.

Highway 71 is a paved highway running north and south through the town of Fouke, Arkansas, and plaintiffs at the time of the accident were traveling south. The highway is intersected from the west by a side street known in the record as "the gin street." This street was not paved and its surface was somewhat lower than the surface of Highway 71 so that a traveler entering Highway 71 from the gin street did so on an incline of perhaps two and a half feet. Defendant maintains a line of poles on which it carries its wires and lights on a right of way parallel with and about 75 feet distant from the west edge of Highway 71. Prior to the accident a crew of its employees were at work installing a street light on its right of way situate about 300 feet northerly from the north edge of the gin street. They were using a truck 22 feet long, 8 feet wide and 8 feet 8 inches high. While the truck was 22 feet in length, the portion of the truck described as being 8 feet 8 inches high was that part of the truck back of the hood and cab and was about 12 feet in length. Pictures introduced in evidence show that it was enclosed with metal such as is used in the construction of the ordinary automobile and had a door on each side with a window at the top of the doors. It was an ordinary service truck. Attached to the rear was an A-frame extending upward at an angle of about 45 degrees, the apex end being about 10 feet from the surface of the ground. The crew, having finished work at the above described pole, drove the truck, going south, onto the highway so that the east side of the truck extended only 3 feet on the paved portion of the highway while the rest of the truck extended out on the shoulder. The truck was being driven slowly in second speed and certain members of the crew were walking behind it. They were equipped with tool belts and paraphernalia for climbing poles and for that reason were not riding as it was more expeditious to walk

than to remove this paraphernalia in preparation for riding, it being against the rules of the company, as a safety measure, to ride without removing such equipment. The truck was going south enroute to the next pole on the right of way which was a block south of the gin street.

Before entering the town Highway 71 crosses a railroad track from which point to a point three blocks south of the point of intersection of the gin street the center of the highway was marked with a "double yellow stripe," the purpose of which was to apprise motorists that under ordinary operating conditions the crossing of the center line in order to pass other vehicles was prohibited. Plaintiffs had been traveling at a speed of 40 to 45 miles an hour as they entered the town but as they approached defendant's truck from the rear they reduced their speed to from 20 to 25 miles an hour. They knew they were approaching the intersection of the gin street but their view toward the west was obstructed by defendant's truck so that they were unable to observe whether there was any traffic entering Highway 71 from the west on the gin street. They turned out to the left for the purpose of going around defendant's truck. In the meantime Frank Eaton, coming from the west, drove his truck onto the highway. He was observed by the driver of defendant's truck but he was unable to see the Brown truck approaching from the north. He drove across the center line of Highway 71, intending to turn north. As J. C. Brown was in the act of passing defendant's truck he saw Eaton immediately in front of him and Eaton likewise saw the Brown truck, and each driver attempted to avoid collision without success.

The action was tried to the Court without a jury. The court found that the movement of defendant's truck was not a normal traveling movement along the highway but was a work operation of defendant's employees, that the defendant was negligent because its truck obstructed the view and because it failed to give proper warning, and that plaintiffs were not guilty of contributory negligence. Other facts will be developed in the course of this opinion.

In seeking reversal defendant challenges the finding of the court to the effect that it was guilty of negligence and that the plaintiffs were not guilty of contributory negligence. The applicable law is that of Arkansas. The case is somewhat unusual in its facts because there was in fact no collision with defendant's truck. Counsel for plaintiffs have cited numerous cases from other jurisdictions but we think have overlooked controlling decisions of the Supreme Court of Arkansas.

To determine the issues here it is necessary to consider the status of defendant's moving vehicle and the relative duties and reciprocal rights of the travelers on this highway as determined by the laws of Arkansas. While there is a finding that the defendant's movement was not a normal one it is observed that counsel for plaintiffs do not contend that this finding is a material one because they say, "It is actually immaterial whether it was a work operation or a movement of the truck in preparation for another work operation." Defendant's employees had completed the work of installing a street light at a pole some 300 feet north of the place of the accident and the truck was being driven on the public highway on its side of the highway to another point where it was intended to do further work but the work was not to be done on the public highway. The highway was simply being used as a public thoroughfare upon which defendant was entitled to travel. The gist of the charge of negligence is that defendant's truck obstructed the view of plaintiffs. The plaintiffs, however, knew they were approaching this intersection. Mrs. Brown positively testified that she was very familiar with it and knew they were approaching it, and Mr. Brown testified that he also knew. He testified:

"I think there is an intersection there, yes.

"Q. Did you know it at that time? A. Well, yes, I guess I did.

"Q. Did you look to see if there was anybody coming across the inter-

section? A. Yes, sir, I looked to the left as far as I could see from Mr. Eaton's house; I couldn't see to the right for the other truck.

"Q. You couldn't see to the right for the company truck? A. That is right.

"Q. You didn't look until you were up behind it pretty close? A. I just pulled over farther back; when I got to the top of the hill, I pulled over and there was nothing coming down the road, I saw this truck stopped, and I went on.

"Q. Pulled over into the left hand lane after you got on top of the hill? A. Not right after. I would say from, oh, halfway distance, maybe a little nearer. I had not gone far.

"Q. From there to the truck? A. Halfway to the truck.

"Q. You stayed in the left hand lane all the way? A. That is right."

The court found that defendant's truck did not stop before the accident happened. The driver of the Brown truck, according to his own testimony, could not see to the right but he knew he was approaching the intersection and the double yellow stripe told him that under ordinary conditions he should not attempt to cross the center line of the highway into the left lane. The very fact that his vision was obstructed required him to proceed toward this intersection with more caution than if he had had an unobstructed view. Under the decisions of the Supreme Court of Arkansas the driver of the head car owes no duty to the rear or trailing car except to use the road in accordance with the law of the road. The driver of the forward car, even though a slow moving car, is not bound to know at his peril that an automobile is desirous of passing. Ward v. Haralson, 196 Ark. 785, 120 S.W. 2d 322; Madison-Smith Cadillac Co. v. Lloyd, 184 Ark. 542, 43 S.W.2d 729; Acco Transp. Co. v. Smith, 207 Ark. 70, 178 S.W. 2d 1011. The facts in Ward v. Haralson, supra, are in many respects very similar to the facts in the case at bar. In that case, as in this, plaintiffs' car did not collide with that of the defendant but it was claimed that the driver of the defendant's car violated the law of the road in stopping the truck on the highway; that he either stopped or so nearly so as to have the same effect, at a point where it could not be seen by those approaching from the rear; that the driver of the truck failed to give any warning to traffic and that he failed to drive the truck off the highway and onto the shoulder before stopping. The collision in that case occurred while plaintiffs were going around the defendant's truck. The driver of the plaintiffs' car did not see defendant's truck until it was about 150 feet ahead of him. The truck was traveling down hill very slowly on the right side of the road. Upon discovering the truck the driver cut to the left to pass it and rammed into the other car. Before the accident defendant's truck had not stopped. The court among other things held that the defendant in driving slowly was not negligent but "on the contrary it was an exhibition of care and caution not usually displayed by truck drivers in our experience. This truck was running along the highway, slowly, it is true, but it was not suddenly stopped * * * nor was it suddenly slowed down in the line of traffic without signal. * * * the truck was always in front moving on its own right side of the highway and Haralson came up behind from over the hill at such a rate of speed and on such a wet slippery pavement that he was unable to control his own car. Even so, the truck did not hit him * * *." [196 Ark. 785, 120 S. W.2d 323.] The court further said:

"This case is more nearly like that of Madison-Smith Cadillac Co. v. Lloyd, 184 Ark. 542, 43 S.W.2d 729, where we held that 'the law of the road is that the automobile in front has the superior right to the use of the highway for the purpose of leaving it on either side to enter intersecting roads', and that a driver in the rear who fails to observe such rule is guilty of contributory negligence. *While there is no question of turning off the highway into an intersecting road in the case at bar, we think the principle*

*stated there applicable here with more force, since the truck was proceeding straight ahead on its own right side of the road, and the car in the rear must recognize the superior right of the truck to so proceed on its own way, and so manage his own car as to cause no injury under the penalty of being chargeable with negligence.*

"* * * Even though he (Haralson) did not see the truck until within 150 feet of it, he should have anticipated the possibility of a vehicle in front of him, and so regulated his speed as to have his car under control, and a failure to do so under the circumstances, is negligence. If, on the other hand he undertook to pass the truck on its left without knowing he had a clear right of way, and the collision occurred, he would be negligent, and in neither case could it be said the driver of the truck was guilty of any negligence. Since the front car has the superior right to proceed along the highway on its own right side, the rear car, in undertaking to pass, does so at its own peril from oncoming traffic. *Here, the truck driver did nothing to cause or contribute to this accident, except to be on the highway when the emergency arose which necessitated the passing of the truck by Haralson,—an emergency created by himself. The truck had the right to be there and to proceed leisurely if the driver so chose.*" (Italics supplied.)

█ In the instant case defendant was driving its truck straight ahead well onto the right half of the paved portion of the highway; in fact, it occupied only about three feet of the right lane, the rest of its vehicle being off to the right on the shoulder of the highway and certainly the plaintiffs, with knowledge that they were at an intersection and that they could not see traffic that might be entering from the right, should either have stopped or approached with their car under such control as to protect both themselves and other travelers.

The teaching of Ward v. Haralson, supra, was reiterated and reaffirmed by the Supreme Court of Arkansas in Acco Transportation Co. v. Smith, supra. In that case plaintiffs were in a wagon drawn by a mule, traveling very slowly, well on their own side of the highway, when they were overtaken and struck by defendant's truck. In the course of the opinion, after quoting from Ward v. Haralson, the court said:

"So, here, the wagon was proceeding slowly down the road, perhaps at some 3 or 4 miles per hour, when the truck undertook to pass it going in the same direction at 25 to 30 miles per hour, or about 10 times as fast as the wagon, *and we think it was the duty of the driver to recognize the superior right of the wagon to so proceed on its way, and to so manage his truck as to cause no injury under the penalty of being chargeable with negligence.*" [207 Ark. 70, 178 S.W.2d 1013.] (Italics supplied.)

In principle we think this case can not be distinguished from the case at bar.

█ Applying the law of Arkansas as announced in these cases to the undisputed facts in the instant case, we think there is no basis for the finding that defendant was negligent in obstructing the view. But it is urged that the driver of defendant's truck was negligent in failing to give signal or warning, either of the fact that plaintiffs were approaching the intersection or that Eaton was approaching at the intersection. It was the duty of the driver of plaintiffs' car to keep it a safe distance behind defendant's truck and to have his car well in hand to avoid injury to the vehicle ahead so long as that vehicle was being driven in accordance with the law of the road. As has been observed, defendant's truck was being driven on its own side of the highway in accordance with the law of the road. The driver of that truck was under no duty to warn the driver of plaintiffs' car that they were approaching an intersection, but even if that duty had been upon the driver of the head car, failure to give such warning would have been quite immaterial because the plaintiffs both knew they were approaching this intersection. However, the duty of giving

warning or signal by a driver has reference to the intention of the driver as to the movements of his vehicle. If he intends to stop or seriously slacken the speed of his car he should give signal; if he intends to turn his car either to the right or to the left he must so signal. It was not the duty of the driver of defendant's truck to give warning that Eaton was coming onto the highway; in fact, we know of no signal that he could have given that might have been understood. There being no duty to give signal and no necessity for giving signal as to the approach to the intersection because plaintiffs already knew they were so approaching, there can certainly be no negligence in having omitted to attempt the giving of any such signal. One may not be held guilty of negligence for failing to do that which he is under no duty to do. Scott v. Chicago, R. I. & P. R. Co., 8 Cir., 197 F.2d 259. Manifestly, the accident was the proximate result of the negligence of the driver of plaintiffs' car and not of any negligence on behalf of defendant.

We have considered the other contentions of plaintiffs but find them wholly without merit.

The judgment appealed from is therefore reversed and the cause remanded with directions to dismiss the action.