## WOOD v POSTHUMA

Docket No. 52906. Submitted May 8, 1981, at Grand Rapids.—Decided July 28, 1981. Leave to appeal applied for.

Virginia and Charles Wood filed a complaint in Wexford Circuit Court alleging professional negligence on the part of defendants, Millard Posthuma, M.D., Medical Arts Group, P.C., and George F. Wagoner, M.D., jointly and severally, in connection with a diagnosis and surgery performed on Mrs. Wood by the two doctors. Defendant Medical Arts Group, P.C., is a professional corporation to which the two doctors belonged. Plaintiffs named only one expert witness, Dr. Joseph, whom they would call at trial. When the trial court sustained defendants' objection to expert testimony by Dr. Joseph on the ground that he was not qualified to testify as to the standard of care required of a specialist in obstetrics and gynecology, plaintiffs attempted to call another witness, Dr. Haberlein, to testify as to the applicable standard of care. The court also sustained defendants' objection to this witness and would not allow Dr. Haberlein to testify as an expert witness on the ground that he had not been named as an expert witness prior to trial. The trial court subsequently directed a verdict of no cause of action in favor of defendant Wagoner, and the jury returned a verdict of no cause of action in favor of the other two defendants. Judgment was entered, William R. Peterson, J. Plaintiffs appeal. *Held:*

1. The trial court did not abuse its discretion by refusing to allow expert testimony by Dr. Haberlein. He was not listed as an expert witness and he was not asked any questions during the taking of his deposition concerning the standard of care to

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence § 3.

[2] 22 Am Jur 2d, Damages § 113.
61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 201–204.
Standard of skill and care required of specialist. 21 ALR3d 953.

[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 211, 346.

[4] 75 Am Jur 2d, Trial §§ 573, 645 *et seq.*

[5] 75 Am Jur 2d, Trial §§ 906–918.

be used by an obstetrician and gynecologist. Furthermore, plaintiffs did not disclose what expert witnesses they expected to call until 15 days before trial, at which time they listed only Dr. Joseph.

2. The directed verdict in favor of defendant Wagoner was proper because plaintiffs failed to introduce evidence as to the standard of care required of a specialist in Wagoner's field.

3. Although plaintiffs objected to the trial court's failure to follow the text of the Standard Jury Instructions, they did not specify the grounds for their objection. No party may assign as error the giving or the failure to give an instruction unless he objects thereto stating specifically the matter to which he objects and the grounds of his objection.

4. Although the trial judge made prejudicial remarks in front of the jury, he gave the jury a cautionary instruction. Any harm arising because of the remark was cured by the instruction. The court did not commit reversible error by declining to grant a mistrial.

Affirmed.

1. EVIDENCE — EXPERT TESTIMONY — APPEAL.

Admission or exclusion of expert testimony is within a trial court's discretion and the trial court's decision will not be reversed on appeal absent a clear abuse of discretion.

2. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE.

A treating physician is liable for damages when it is shown that he departed from that standard of care which is known as customary medical practice.

3. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — STANDARD OF CARE — BURDEN OF PROOF.

The burden of proving the standard of care of customary medical practice in a malpractice action against a physician is upon the plaintiff and it must be proved, in most cases, with the aid of expert testimony.

4. TRIAL — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS — COURT RULES.

A trial court must give pertinent portions of the Michigan Standard Jury Instructions when they are applicable and accurately state the applicable law (GCR 1963, 516.6[2]).

5. TRIAL — JURY INSTRUCTIONS — OBJECTION TO JURY INSTRUCTION — COURT RULES.

A party who objects to the giving of a particular jury instruction

must specifically state the matter to which he objects and the grounds of his objection (GCR 1963, 516.2).

*Charfoos, Christensen, Gilbert & Archer, P.C.* (by *John G. Konkel),* for plaintiffs.

*Baxter & Hammond* (by *Joel M. Boyden),* for defendants.

Before: MACKENZIE, P.J., and R. B. BURNS and J. N. O'BRIEN,* JJ.

R. B. BURNS, J. The present suit concerns a medical malpractice action brought against defendants. The trial court directed a verdict of no cause of action in favor of defendant Wagoner, and the jury returned verdicts of no cause of action in favor of defendants Posthuma and Medical Arts Group. Plaintiffs appeal, and we affirm.

Virginia Wood went to see Dr. Wagoner, a specialist in obstetrics and gynecology, complaining of abdominal pains. After examining her, Wagoner gave a differential diagnosis indicating that she was suffering from either a twisted ovarian cyst or diverticulitis. Diverticulitis is an inflammation of a sac. or pouch, called a diverticulum, coming off of the intestine or other organ. Realizing that an ovarian cyst is a serious problem, Wagoner scheduled Mrs. Wood for surgery the next day.

The next morning Wagoner scheduled Wood for a barium enema to confirm or eliminate his secondary diagnosis of diverticulitis. The barium enema was performed by Dr. Robert Barnett, a radiologist, who opined that Wood had a diverticulitis abscess.

At about noon, Wagoner went to the radiology

---

* Circuit judge, sitting on the Court of Appeals by assignment.

department to examine the X-rays prepared in connections with the barium enema. Barnett was not present, so Wagoner read the X-rays himself. He determined that Mrs. Wood was not suffering from diverticulitis, and at 1 p.m. he started to perform surgery for the removal of an ovarian cyst.

After making an incision into Wood's abdomen, Wagoner discovered that she was actually suffering from diverticulitis in the sigmoid colon. Realizing that this condition was outside of his area of expertise, Wagoner called his colleague, Dr. Millard Posthuma, a general surgeon, who peformed the surgery to eliminate the diverticulitis.

Wood continued to feel ill after her release from the hospital, and she subsequently underwent operations for a bowel irrigation and a hernia.

Mrs. Wood and her husband instituted this suit against Wagoner, Posthuma, and the Medical Arts Group, which was the professional corporation to which Wagoner and Posthuma belonged. During the preparation for trial, the defendants asked for a list of all expert witnesses plaintiffs intended to call. The only named expert was Dr. William Joseph.

At trial, the plaintiffs attempted to elicit from Dr. Joseph, a general surgeon, the standard of care required of a specialist in obstetrics and gynecology. Defendants objected on the ground that the witness was not qualified to testify as to that standard, and the court sustained the objection.

After the court refused to allow Dr. Joseph to testify regarding the standard of care, the plaintiffs called Dr. Charles Haberlein, a specialist in obstetrics and gynecology, to testify concerning the standard of care. The defendants objected on the ground that Dr. Haberlein had not been named as

an expert witness to be called by the plaintiffs. The court sustained the objection.

As was previously stated, the trial court subsequently directed a verdict of no cause of action in favor of Wagoner, and the jury returned a verdict of no cause of action as to the other defendants. On appeal, the plaintiffs claim that the trial court erred by refusing to allow Dr. Haberlein to testify as an expert witness. The plaintiffs base this argument on the fact that Dr. Haberlein was named as a witness, even though he was not listed as an expert witness.

It is within the trial court's discretion to admit or exclude expert testimony, and such exercise of discretion will not be reversed on appeal absent a clear abuse. See *Hughes v Allis-Chalmers Corp*, 96 Mich App 175; 292 NW2d 514 (1980).

In our opinion the trial court did not abuse its discretion. The defendant requested a list of all expert witnesses on numerous occasions, but Dr. Haberlein was never so listed. When his deposition was taken, neither plaintiffs nor defendants asked any questions concerning the standard of care to be used by an obstetrician and gynecologist. Plaintiffs waited until fifteen days before trial to disclose their expert witnesses and then listed only Dr. Joseph. The trial court committed no error by ruling as it did.

Next, plaintiffs claim that the trial court erred by directing a verdict in favor of defendant Wagoner. Defendants respond that the directed verdict was proper since plaintiffs failed to introduce evidence as to the standard of care required of a specialist.

A treating physician is liable for damages when it is shown that he departed from that standard of care which is known as customary medical prac-

tice. See *Patelczyk v Olson,* 95 Mich App 281; 289 NW2d 910 (1980), and *McPhee v Bay City Samaritan Hospital,* 10 Mich App 567; 159 NW2d 880 (1968). The burden of proving the standard of care is upon the plaintiff and it must be proved, in most cases, with the aid of expert testimony. *Patelczyk, supra.*

In the present case there was absolutely no evidence establishing the standard of care required of Dr. Wagoner and no evidence establishing a failure to use such care.

The plaintiffs also claim that the trial court erred by departing from the text of the Standard Jury Instructions.

GCR 1963, 516.6(2) requires that a trial court give pertinent portions of the Michigan Standard Jury Instructions when they are applicable and accurately state the applicable law.

GCR 1963, 516.2 requires that a party objecting to the instructions specifically state the matter to which he objects and the grounds of his objections. In the present case the plaintiffs objected to the instructions but failed to specify the grounds of objection.

Lastly, plaintiffs allege that the trial court made prejudicial remarks in front of the jury and that the court committed reversible error when it declined to grant a mistrial.

The record discloses that the trial judge admitted that a remark he made had been in poor taste, and he gave the jury a cautionary instruction. Any harm arising because of the remark was cured by the instruction.

Affirmed.